UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LOTOYA M. COLLINS** | **CIVIL ACTION NO. 05-1090** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SAILORMEN INC. D/B/A POPEYE'S CHICKEN & BISCUITS** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is an employment discrimination action brought by Plaintiff Latoya M. Collins ("Collins") against her former employer, Sailormen Inc. d/b/a Popeye's Chicken & Biscuits ("Sailormen"). Collins alleges that she was terminated because of her race (black), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:301, *et seq.*, and because she has a child with a disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Collins further alleges that, during her employment, she was paid unequal wages on the basis of her race in violation of Title VII and the LEDL.

Sailormen has filed a Motion for Summary Judgment [Doc. No. 25], which is oppposed by Collins. For the following reasons, Sailormen's Motion for Summary Judgment is GRANTED.

**I.   FACTS AND PROCEDURAL HISTORY**

Sailormen is the largest franchisee of Popeye's Chicken & Biscuits ("Popeye's") restaurants in the United States. Sailormen operates approximately 165 fast food restaurants in 7 different states.

In 2000, Sailormen acquired five Popeye's restaurants in Monroe, Louisiana, and one in Ruston, Louisiana. Sailormen has an area manager over these six restaurants, and each restaurant has a general manager who reports to the area manager.

At the time Sailormen acquired these six restaurants, Collins was working at one of the Monroe locations as an assistant manager. Sailormen retained her in this position at the same rate of pay.

In October 2001, Collins gave birth to a daughter with spina bifida. During her daughter's first year, Collins had to take her for medical care three or four times a week with five or more doctors. By the second year, the frequency of her daughter's medical care had been reduced to two times a week with three doctors.

In 2002, Danny Evans ("Evans") became area manager over the six restaurants in Monroe and Ruston.

On February 10, 2003, Collins received her first warning for tardiness, which stated as follows:

> Mrs. Collins does have a child with a few minor problems that cause her to be late but somewhere there has to come to a agreement or be solved. Please try to get this problem under control as a manager. We need you to be on time. Thank you in advance and try to do a better job. This is just a warning.

In June 2003, Evans and his supervisor, District Manager Alan Marrero ("Marrero"), promoted Collins to general manager of one of the Monroe restaurants, known as Store 92, and gave her a pay raise. She received the first part of her pay raise, from $440 per week to $475 per week on June 16, 2003.

At the time of her promotion, Collins raised the issue of her daughter's medical care with

2

Evans, and he assured her that it would not be a problem. At that time, Evans also explained to Collins his expectations for her, including specific goals on mystery shop scores, increasing sales, maintaining food costs at an acceptable level, maintaining labor costs at an acceptable level, profit expectations, and proper standards and procedures for maintaining the cleanliness of the restaurant. During the first ninety days of her employment as a general manager, Collins was on probation. Collins and Evans had a positive working relationship at this time.

With Collins' promotion, five of the six general managers reporting to Evans were black. However, these managers had already been hired or promoted to their positions when Evans came to work for Sailormen.

In August 2003, Evans gave Collins a written warning for failing to meet her food cost target. That same month Sailormen gave Collins the second part of her pay raise which brought her weekly salary to $500.

Collins' ninety-day probation period ended on September 14, 2003, and Evans retained her as general manager. Collins and Evans continued to have a good working relationship at this time.

At the time Collins became a general manager, there were two white general managers, Freddy Kozlovsky ("Kozlovsky") and Roy Naron ("Naron"), and two black general managers, James Elmore ("Elmore") and Sharon Moore ("Moore"), who had higher salaries than Collins.

Over the next several months, Evans and Marrero became dissatisfied with Collins' performance. Collins admits that there were problems at her restaurant, but believes they were caused by her assistant managers.

In November 2003, Evans gave Collins a second written warning for failing to meet her

3

food cost target. Collins admits that the food cost target was reasonable and that it was not met. However, Collins was on vacation when Evans inspected the restaurant. She contends that the assistant manager in charge of the restaurant was responsible during that time.

In December 2003, Sailormen received a letter of complaint from the Activities Director of a local retirement home about how a group from the home was treated at the Popeye's that Collins managed.[1] Collins was the manager on duty at the time of the incident, and the letter included specific complaints about Collins herself. Evans showed the letter to Collins and expressed the fact that he was upset. Collins denies that the complaints were legitimate or that she did anything wrong, and, in fact, contends that she and her husband helped several customers in the group who had apparent disabilities.

Following the December 2003 complaint, Evans began documenting concerns about Collins' performance. He noted one instance when she was two hours late, and in early January 2004, he prepared a summary of areas in which he was dissatisfied with Collins' performance. In addition to the items on this summary, Evans notes that a short time later the inventory was not entered properly at Collins' store.

Evans and Marrero continued to receive complaints about Collins' restaurant. The customers complained that the manager and employees were unprofessional, the store was unclean, and the food was of poor quality, as well as other problems. Collins points out that the issues raised occurred when an assistant manager was on duty and that she was not given notice

---

[1] Collins objects to the Court's consideration of this letter because it is hearsay. The Court agrees that the contents of the letter are hearsay, but has considered only the fact that a letter of complaint was received by Evans and the actions taken by him in response, not the truth of the allegations contained in the letter.

of the issues.

In the first week of March, 2004, Marrero traveled from his home near Baton Rouge to North Louisiana to inspect the restaurants in Evans' area. Collins notified Evans that she could not be present for Marrero's visit because she had to take her child to New Orleans for medical care for several days. She was told by Evans that she needed to be present for Marrero's visit. Collins went to New Orleans anyway.

When Marrero inspected Collins' restaurant, he found numerous problems and informed Evans that it was the dirtiest restaurant in the area. Evans responded by giving Collins another written warning identifying the problems and informing her that more serious disciplinary action would be taken if the problems were not corrected. Collins points out that the inspection occurred when she had been away from the store and it had been under the management of an assistant manager.

A couple of weeks later, Steven Branch ("Branch"), an inspector for Sailormen who is based at corporate headquarters in Miami, Florida, traveled to Monroe. On March 24, 2004, Branch inspected Collins' restaurant. Branch, who is black, commented in the report that Collins needed to be in control of the restaurant and its employees and that customer service was not a priority. However, he scored the restaurant 92% out of a possible 100%.

Marrero and Evans discussed Branch's inspection and decided to terminate Collins on March 25, 2004.

Marrero and Evans chose Vanessa Williams, who is black, to replace Collins as general manager.

On June 16, 2004, Collins filed a charge of discrimination with the EEOC.

On May 24, 2005, Collins filed this lawsuit, asserting claims of race and disability discrimination.

On November 10, 2006, Sailormen filed a Motion for Summary Judgment [Doc. No. 25], seeking dismissal of all Collins' claims. On December 11, 2006, pursuant to an extension of time granted by the Court, Collins filed a memorandum in opposition [Doc. No. 29] to the Motion for Summary Judgment. On January 16, 2007, the Court permitted Sailormen to file a reply brief.

Briefing is complete, and the Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Termination

Collins contends that she was discriminatorily terminated because of her race, in violation of Title VII and the LEDL, and because of her daughter's disability, in violation of the ADA.

#### 1. Race Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

Similarly, the LEDL makes it "unlawful discrimination in employment for an employer to . . . [i]ntentionally . . . discharge any individual . . . because of the individual's race." La. Rev. Stat. 23:332.

In employment discrimination cases, a plaintiff may prove her case by direct or circumstantial evidence. Collins seeks to rely on circumstantial evidence to support her claims. Therefore, the Court applies the familiar burden-shifting scheme of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802(1973).[2]

First, a plaintiff must make out a prima facie case of race discrimination by demonstrating that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or was otherwise discriminated against. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Banks v. AT & T Wireless, Inc.*, No. 04-40468, 113 Fed.Appx. 614, 2004 WL 2434896, at *1 (5th Cir. Nov. 1, 2004).

If the plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to articulate legitimate, non-discriminatory reasons for the adverse action. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000).

Finally, if defendant meets its burden, then plaintiff must show that its articulated reasons are pretext for discrimination. *Id.* at 143.

Collins can meet the requirements for the first, second, and third prongs of her prima facie case: she is black, she was qualified for the position of general manager, and she was terminated.

However, Sailormen argues that Collins cannot meet the fourth prong because her replacement, Williams, was black, and Collins has no other evidence that her termination was discriminatory.

Having fully reviewed the record in this matter, the Court agrees with Sailormen. Collins has presented no evidence that Sailormen discriminated against her because of her race. The

---

[2]Because the LEDL is similar to Title VII, LEDL claims are evaluated under the federal standard. *Bustamento v. Tucker*, 607 So.2d 532, 539 n.9 (La. 1992).

evidence shows that five of the six general managers under Evans were black. Collins generalizes that Evans hired "only whites," but Evans and Marrero promoted Collins, whom they certainly knew was black, to general manager. Collins has presented no evidence that Evans and Marrero began to exhibit racial animus in the ensuing seven months prior to her termination. *See O'Brien v. Lucas Associates Personnel, Inc.*, No. 04-10738, 127 Fed.Appx. 702, 707, 2005 WL 768773 at *4 (5th Cir. April 5, 2005) ("The 'same actor doctrine' reasons that '[f]rom the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'") (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (other citation omitted)).

Finally, it is undisputed that Collins' restaurant consistently failed to meet expected performance standards and was the subject of a number of customer complaints. Collins does not deny the problems at her restaurant; instead, she denies that she should be held responsible when the problems occurred under the direct supervision of her assistant managers.[3] It is not the business of the Court to second-guess the personnel decisions of businesses if those decisions are not discriminatory. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327-28 (5th Cir. 1993) (Civil rights statutes are "not intended to be a vehicle for judicial second-guessing of business decisions, nor [are they] intended to transform the courts into personnel managers").

In this case, Collins cannot raise a genuine issue of material fact for trial as to whether the

---

[3]As Sailormen points out, Collins' opposition contradicts the affidavit she submitted from her former assistant manager, Karen Blunt. Collins argues that she worked days and should not be responsible for problems at night, but Blunt testifies that Collins closed the restaurant every night except Sundays.

performance problems articulated by Sailormen are pretext for discrimination.

Under these circumstances, the Court finds that Collins has failed to establish a prima facie case of race discrimination. Accordingly, Sailormen's Motion for Summary Judgment on Collins' race discrimination claims under Title VII and the LEDL is GRANTED.

### 2. Disability Discrimination

Collins also raises an associational disability claim under the ADA, contending that she was terminated because of her daughter's disability.

The ADA prohibits discrimination by "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

While the Court of Appeals for the Fifth Circuit has not considered an associational claim under the ADA, the Tenth Circuit has articulated the elements of a prima facie case. To establish a prima facie case, the plaintiff must show that (1) she was "qualified" for her job at the time of the adverse employment action; (2) she was subjected to adverse employment action; (3) she was known by her employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir. 1997).

If the plaintiff meets her prima facie burden, the court is then instructed to apply the remainder of the *McDonnell Douglas* burden-shifting framework. *Id.*

It is undisputed that Collins meets the required showings on the first, second, and third prongs: she was terminated, she was qualified to be a general manager, and Sailormen knew that

her daughter had spina bifida.[4]

On the fourth prong, the Court has considered the following facts pertinent to Collins' claim of associational disability:

- On February 10, 2003, Collins received a written warning for tardiness in which Evans states that "Mrs. Collins does have a child with a few minor problems that cause her to be late but somewhere there has to come to a agreement or be solved."

- Evans told Collins that she had to be present for Marrero's inspection of the restaurant in the first week of March, 2004, even though Collins told him that she had to take her child to New Orleans for medical care for several days.

- Karen Blunt ("Blunt"), a former assistant manager at Store 92, provided affidavit testimony that Evans told her on more than one occasion that Collins' "child was more important to her than her job and that [Evans] needed to find a new General Manager."

- Blunt also testified that she and Collins had reached a scheduling agreement, but that Evans "did not agree with this scheduling order and continued to complain to [Blunt] about [Collins'] scheduling issues because of her child."

It is undisputed that Evans was a decisionmaker in Collins' termination on March 25, 2004. Accepting Blunt's testimony as true, Evans evidenced at least some annoyance with Collins' need to obtain medical care for her disabled child. Shortly before her termination, Collins alleges that Evans prohibited her from traveling to New Orleans to obtain medical care for her daughter. While she was not written up for defying his order, as Collins points out, she was terminated within one month. Given the low burden placed on Collins at the prima facie stage, the close temporary proximity between her trip to New Orleans and her termination, and the alleged comments by Evans, the Court finds that she has raised a genuine issue of material fact as to whether her daughter's disability was a potential factor in Sailormen's decision to

---

[4] Evans knew that Collins' daughter had spina bifida, and Marrero knew that she had some type of "illness."

terminate her.

However, even if Collins can establish a prima facie case, as discussed fully above, Sailormen has presented evidence that her performance, not her child's disability, was the cause of her termination.

Because Sailormen has articulated legitimate, non-discriminatory reasons for Collins' termination, she must produce evidence sufficient to show that Sailormen's reasons are pretextual. Collins fails to meet her burden at this stage. While Collins claims that Evans "trumped-up" disciplinary warnings to justify her termination, the only written evidence referring to her daughter's disability was a written warning for tardiness issued four months **before** she was promoted to general manager. Evans was aware of her daughter's disability and Collins' need to take her daughter for medical care at the time he and Marrero promoted her to general manager. Collins (not Evans) raised the issue of her daughter's medical care; Evans assured her that he would work with her; and Collins agreed that Evans did work with her.

On the other hand, Sailormen has presented undisputed evidence that Collins' restaurant consistently had performance problems and customer complaints. Even if Blunt has correctly conveyed Evans' annoyance with Collins' need to schedule work around her daughter's medical appointments, Evans did not make the decision to terminate Collins alone. Marrero personally inspected the restaurant Collins managed, found it to be the dirtiest restaurant in the region, and agreed that Collins should be terminated because of performance problems following Branch's inspection. Collins has presented no evidence that Marrero made any discriminatory comments about her daughter, nor has she presented evidence that Marrero had any animus towards her because of her daughter's disability.

Under these circumstances, the Court finds that Collins has failed to raise a genuine inference of pretext, especially where Sailormen has offered extensive evidence of legitimate, non-discriminatory reasons for her termination. Sailormen's Motion for Summary Judgment on Collins' associational disability discrimination claim is GRANTED.

C.   **Wages**

In addition to her claim of discriminatory termination, Collins asserts that she was unlawfully denied equal wages because of her race.

Title VII and the LEDL prohibit discrimination in compensation based on an individual's race. *See* 42 U.S.C. § 2000e-2(a)(1); La. Rev. Stat. 23:332. To prove an unequal pay claim, the plaintiff must establish her prima facie case of discrimination by showing "that [s]he was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1074 (5th Cir. 1981); *see also Johnson v. TCB Const. Co., Inc.*, Civil Action No. 2:05-cv-370(DCB)(JMR), 2007 WL 37769, at * 1 (S.D. Miss. Jan. 4, 2007) (citing *Simpri v. City of New York*, 2003 WL 23095554, at *6 (S.D. N.Y. Dec. 30, 2003)) (Plaintiff must establish a prima facie case by showing that (1) her employer paid different wages to black and non-black employees; (2) the employees performed equal work on jobs requiring equal skill, effort and responsibility; and (3) the jobs were performed under similar working conditions).

Assuming the plaintiff can meet this burden, then the court applies the remainder of the *McDonnell Douglas* burden-shifting framework. *See Johnson*, 2007 WL 37769, at *1.

Collins contends that she was paid less than white general managers at other restaurants owned by Sailormen in the Monroe/Ruston area. She can meet her prima facie burden because

Sailormen concedes that there were two white general managers, Kozlovsky and Naron, who were paid more than she was.[5]

However, Sailormen has also produced evidence that Kozlovsky and Naron had more experience than Collins. Collins was only twenty-nine years old at the time she was promoted, and her only management and restaurant experience stemmed from her employment at Popeye's. Kozlovsky and Naron were in their forties and had 15 to 20 years of management experience in fast food restaurants when they were hired by Sailormen. Therefore, Sailormen produced a legitimate, non-discriminatory reason for the pay differential.

The burden shifts to Collins to show that Sailormen's purported reason for the pay differential is pretext for race discrimination. She has failed to do. In fact, Collins failed to oppose Sailormen's Motion for Summary Judgment on her wage claims.[6]

Further, to the extent that Collins attempts to state a claim for discrimination based on the salary paid to her as an assistant manager, Sailormen correctly argues that this claim is time-barred. Under Title VII, Collins could not assert a claim for discriminatory wages more than 300 days before the date she filed her EEOC charge. 42 U.S.C. § 2000e-5(e)(1); *see Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001). Under the LEDL, Collins could not assert a claim for wage discrimination more than eighteen months prior to the filing of this lawsuit. La. Rev. Stat. 23:303(D); *see Horaist v. Doctor's Hosp. of Opelousas,* 255 F.3d 261,

---

[5] Collins was paid $1,000 per pay period; Kozlovsky was paid $1,230; and Naron was paid $1,200.

[6] Even if Collins had provided some response, Sailormen points out that two black general managers with more experience than Collins, James Elmore ("Elmore") and Sharon Moore ("Moore"), both received the same salary as Naron. This evidence further undercuts any argument that Collins' slightly lower salary was discriminatory.

269 (5th Cir. 2001). During the applicable time periods for both of these claims, Collins was already a general manager.

Accordingly, Sailormen's Motion for Summary Judgment on Collins' wage claim is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Sailormen's Motion for Summary Judgment [Doc. No. 25] is GRANTED, and Collins' claims are DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this 8th day of March, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE